UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 08-5823(DSD/SRN)

Midwest Theatres Corporation
d/b/a CineMagic Theatres, a
Minnesota corporation,

       Plaintiff,

v.                                             **ORDER**

IMAX Corporation, a Delaware
corporation, Geoff Atkins, an
individual, David Campbell, an
individual, and Jane Doe and
John Doe, as unknown IMAX
officers and employees,

       Defendants.


    Christopher M. Daniels, Esq., David J. Wymore, Esq. and Daniels & Wymore, PLLC, 3165 Fernbrook Lane North, Plymouth, MN 55447, counsel for plaintiff.

    S. Jamal Faleel, Esq. and Fredrikson & Byron, P.A., 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, counsel for defendant IMAX Corporation.


This matter came on for hearing on October 31, 2008, upon plaintiff's motion for a temporary restraining order. Plaintiff and defendants appeared through counsel. Based upon a review of the file, record and proceedings herein, and the arguments of counsel at the hearing, the court denies plaintiff's motion.

**BACKGROUND**

Plaintiff, Midwest Theatres corporation d/b/a CineMagic Theatres ("CineMagic") is a Minnesota corporation that owns and operates movie theaters. Defendant IMAX Corporation ("IMAX") is a Delaware corporation with corporate offices in Canada. This dispute arises out of CineMagic's agreement to purchase two IMAX theater projection systems and licenses to use IMAX's registered trademarks.

Hollywood films are typically shot in standard thirty-five millimeter film format. In 2002, IMAX developed a method of digitally remastering thirty-five millimeter films, which enhances film resolution and permits display on larger mediums. To promote this technology, IMAX developed and marketed a film-based projector and transport system called the MPX that permits digitally remastered films to be shown in IMAX auditoriums.

In December 2006, CineMagic and IMAX entered a Master Agreement in which CineMagic agreed to purchase two MPX systems for theaters in St. Michael and Burnsville, Minnesota. The Master Agreement also licensed CineMagic to use IMAX trademarks and granted CineMagic certain exclusive territory. At this time, CineMagic paid IMAX $1,200,000 for the St. Michael MPX system and $140,000 as partial payment for the Burnsville MPX system.

Before November 2007, CineMagic stopped payments under the Master Agreement. On November 29, 2007, IMAX provided CineMagic

with notice of default in the amount of $1,174,280.35, and gave CineMagic thirty days to cure. CineMagic responded on January 4, 2008, stating that the Master Agreement was invalid because of alleged misrepresentations by IMAX regarding the expected average annual ticket sales for CineMagic's IMAX theaters, IMAX's development of a digital projection system that would render obsolete the MPX system and the indesirability of a "joint venture" agreement that IMAX entered with other theaters. CineMagic demanded modification of the Master Agreement to reflect realistic sales numbers and to contain terms similar to the "joint venture" agreements. IMAX refused CineMagic's demands on January 16, 2008, and required payment of $1,183,839.53 by January 31, 2008. Receiving no payment, IMAX provided notice of default again on July 15, 2008, and on September 18, 2008, terminated the Master Agreement by letter. Thereafter, IMAX informed at least two film distributors of the termination. As a result, one distributor threatened to require advanced payment for all films distributed to CineMagic and the other refused to provide CineMagic with at least one IMAX film to date. Moreover, after terminating the Master Agreement, IMAX granted AMC Theatres ("AMC") the right to use IMAX equipment and its trademark in CineMagic's exclusive territory. AMC's construction of an IMAX theater is in its incipiency.

On October 23, 2008, CineMagic filed a nine-count complaint seeking money damages and injunctive relief. CineMagic now moves

for a temporary restraining order enjoining construction of the AMC theater and prohibiting IMAX from communicating with film distributors about CineMagic's finances and equipment.

**DISCUSSION**

The court considers four familiar factors in determining whether a temporary restraining order should issue: (1) whether there is a substantial threat that the movant will suffer irreparable harm if relief is not granted, (2) whether the irreparable harm to the movant outweighs any potential harm that granting a preliminary injunction may cause the non-moving parties, (3) whether there is a substantial probability that the movant will prevail on the merits, and (4) what action is in the public interest. Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc). The court balances these factors to determine whether the order is warranted. See Taylor Corp. v. Four Seasons Greetings, LLC, 315 F.3d 1039, 1041 (8th Cir. 2003). Plaintiff bears the burden of proving all four factors. See Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003).

The first factor, irreparable harm, is perhaps the most important as "'[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.'" Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (quoting Bandag, Inc. v. Jack's Tire & Oil, Inc., 190 F.3d

924, 926 (8th Cir. 1999)).  Failure to show irreparable harm is an independently sufficient ground upon which to deny injunctive relief.  <u>See</u> <u>id.</u>  Indeed, where legal remedies are adequate, injunctive relief is never appropriate.  <u>See</u> <u>id.</u> (citing <u>Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.</u>, 871 F.2d 734, 738 (8th Cir. 2003)).

In this case, CineMagic argues that IMAX's continued communications with film distributors will result in irreparable harm by causing the distributors to change the terms of distribution or halt distribution altogether.  Such harm, however, is adequately remedied through monetary damages.  Indeed, CineMagic has already calculated the lost profits caused by IMAX's allegedly wrongful conduct and could quantify any future damages.  (<u>See</u> Pl. Br. at 12-13.)  CineMagic further argues that construction of the AMC IMAX theater within its exclusive territory will cause irreparable harm.  Construction of the theater, however, is in its early stages and does not threaten immediate harm.  Moreover, even if the theater's opening was imminent, any damages suffered by CineMagic as a result could be adequately addressed through monetary damages.  Therefore, the court determines that CineMagic has not established irreparable harm, and injunctive relief is inappropriate.

Although CineMagic's failure to establish irreparable harm is fatal to its motion, the court considers briefly the other

Dataphase factors.  The second factor does not support CineMagic because it has not shown irreparable harm.  With respect to the third factor, CineMagic presents plausible arguments that it was fraudulently induced into entering the Master Agreement.  IMAX, however, presents good arguments that no such inducement occurred and that CineMagic breached the Master Agreement.  Because both arguments are facially plausible, CineMagic's likelihood of success on the merits is at best uncertain and does not weigh in favor of an injunction.  Finally, this contractual dispute between two private parties does not substantially implicate any public interest.  Accordingly, the court determines that the "extraordinary remedy" of a temporary restraining order should not issue.  See Lewis, 346 F.3d at 844.

## CONCLUSION

**IT IS HEREBY ORDERED** that CineMagic's motion for a temporary restraining order [Doc. No. 2] is denied.

Dated:  November 3, 2008

s/David S. Doty
David S. Doty, Judge
United States District Court
