```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
                 Civil No. 08-5823(DSD/SRN)
```

Midwest Theatres Corporation
d/b/a CineMagic Theatres, a
Minnesota corporation,

        Plaintiff,

v.                                                    **ORDER**

IMAX Corporation, a Delaware
corporation, Geoff Atkins, an
individual, David Campbell, an
individual, and Jane Doe and
John Doe, as unknown IMAX
officers and employees,

        Defendants.

    Seth Leventhal, Esq., Christopher M. Daniels, Esq., David
    J. Wymore, Esq. and Daniel & Wymore, 3165 Fernbrook Lane
    North, Plymouth, MN 55447, counsel for plaintiff.

    S. Jamal Faleel, Esq., Fredrikson & Byron, P.A., 200
    South Sixth Street, Suite 4000, Minneapolis, MN 55402 and
    Mark D. Litvack, Esq., Matthew J. O'Hara, Esq. and Reed
    Smith 1901 Avenue of the Stars, Suite 700, Los Angeles,
    CA 90067, counsel for defendants.

    This matter is before the court on the motion of defendants Geoff Atkins ("Atkins") and David Campbell ("Campbell") to dismiss. After a review of the file, record and proceedings herein, and for the following reasons, defendants' motion is granted.

**BACKGROUND**

    This federal diversity action arises out of plaintiff Midwest Theatres Corporation d/b/a CineMagic Theatres' ("CineMagic")

agreement to purchase two MPX theater projection systems from defendant IMAX Corporation ("IMAX") for theaters in St. Michael and Burnsville, Minnesota ("IMAX theaters"). CineMagic is a Minnesota corporation with its principal place of business in Minnesota. IMAX is a Canadian corporation with its principal place of business in Canada. Atkins and Campbell are officers of IMAX.

CineMagic alleges that on March 31, 2006, it entered a lease agreement with IMAX for MPX equipment. CineMagic's lenders, however, required CineMagic to purchase the equipment to ensure sufficient collateral. In response, Bryan Sieve ("Sieve"), CineMagic's vice president of finance and business development, expressed interest in entering a risk-sharing joint venture agreement that IMAX had offered to other movie theaters. IMAX and Atkins allegedly responded that a joint venture deal would be less profitable for CineMagic than a purchase agreement. CineMagic requested operational data from other IMAX theaters to corroborate these representations. IMAX and Atkins refused CineMagic's request but indicated that CineMagic could expect 150,000 admits per year at each of its IMAX theaters based largely on documentary and educational programming. IMAX also allegedly allayed CineMagic's concerns about the development of a new IMAX digital projection system by indicating that the technology would not be available until 2009 or 2010. Relying on these representations, CineMagic entered a Master Agreement with IMAX on December 14, 2006, to

purchase the MPX equipment and license exclusive operating territory. IMAX later publicly released operational data indicating that the average multiplex-based IMAX theater generated 78,000 admits per year and that its new digital projection system would be ready within the year.

CineMagic installed the MPX projection system at its St. Michael theater and began showing IMAX films. The IMAX theater ran at a loss, however, because the number of admits was far below 150,000. CineMagic subsequently lost its financing for the Burnsville IMAX theater after its lenders reviewed the operational data from other IMAX theaters and learned of an agreement between AMC Theatres ("AMC") and IMAX to install digital projection systems in 100 AMC theaters.

Thereafter, IMAX claimed in several letters that CineMagic was in default under the purchase agreement for not paying maintenance fees for the St. Michael theater and refusing to pay the initial franchise fees for the Burnsville theater. In addition, IMAX told CineMagic's film distributors not to send IMAX films to CineMagic and that IMAX would be repossessing CineMagic's MPX systems.

CineMagic filed this action on October 23, 2008, against IMAX, Atkins, Campbell and "Jane Doe and John Doe, as unknown IMAX officers and employees." The complaint asserts state law claims for breach of contract, common law fraud, tortious interference with prospective economic advantage, tortious interference with

3

business agreement, breach of implied covenant of good faith and fair dealing, consumer fraud, violation of Minnesota franchise law and defamation.[1]  Atkins and Campbell now move to dismiss all claims against them pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

**DISCUSSION**

**I.    Fraud Claims**

CineMagic asserts fraud claims pursuant to the common law, the Minnesota Consumer Fraud Act and the Minnesota Franchise Act. Federal Rule of Civil Procedure 9(b) provides that a claim of fraud must be pleaded with particularity.  BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007).  To satisfy this heightened pleading requirement, a plaintiff must set forth the "who, what, when, where, and how" of an alleged fraud.  United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006).  In other words, a plaintiff must plead "the time, place and contents" of the false representations, the identity of the individual who made the representations and what was obtained thereby.  BJC Health Sys., 478 F.3d at 917.  The heightened pleading requirement in fraud claims enable defendants to respond promptly and specifically to potentially damaging allegations.  Id.

---

[1] The complaint asserts an additional count for injunctive relief.  (Compl. Count IX.)  The court understands this to be a request for relief rather than a separate substantive claim.

The requirements of Rule 9(b) are read "in harmony with the principles of notice pleading," and the level of particularity required depends upon the nature of a case. Id. (internal quotations omitted). However, "conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Id. (internal quotations omitted).

CineMagic's fraud claims nowhere reference Atkins or Campbell. (See Compl. ¶¶ 83, 85-89, 110-11, 113-14, 123.) Rather, Atkins is mentioned only in the complaint's factual background, which discusses his statements to Sieves regarding the profitability of a joint venture agreement and the number of annual admits expected at each IMAX theater. (Id. ¶¶ 16, 40-41.) These alleged misrepresentations form the basis of CineMagic's fraud claims. (Id. ¶¶ 84-87, 111-12, 123.) The complaint, however, fails to aver when and where Atkins made these statements. Therefore, CineMagic's allegations do not allow Atkins to make the prompt and specific response contemplated by Rule 9(b). Moreover, the complaint contains no allegations of fraudulent conduct against Campbell. Accordingly, the court grants defendants' motion to dismiss the fraud claims against Atkins and Campbell.

**II. Other Claims**

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This statement

does not require detailed factual allegations so long as it "give[s] the defendant fair notice of what the ... claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). A court, however, will dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted if, after taking all facts alleged in the complaint as true, those facts fail "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

### A. Contract Claims

CineMagic's complaint asserts claims for breach of contract and of the implied covenant of good faith and fair dealing. Both claims require that the alleged breaching party be a party to the underlying contract. See Thomas B. Olson & Assocs. v. Leffert, Jay & Polglaze, 756 N.W.2d 907, 918 (Minn. Ct. App. 2008) (contract); In re Hennepin County 1986 Recycling Bond Litig., 540 N.W.2d 494, 503 (Minn. 1995) (covenant of good faith and fair dealing). CineMagic, however, concedes that Atkins and Campbell were not parties to the Master Agreement. Therefore, the court grants their motion to dismiss these claims.

### B. Intentional Torts

CineMagic's claims for tortious interference and defamation are based upon IMAX's alleged representations to CineMagic's film distributors, agreement with AMC and interference with potential

6

moviegoers. See United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 632 (Minn. 1982) (tortious interference claims); Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 255 (Minn. 1980) (defamation elements). The complaint asserts these claims against IMAX alone. Moreover, the complaint's recitation of facts identifies only IMAX as the relevant tortfeasor. Nevertheless, CineMagic maintains that by asserting claims against IMAX it has stated claims against Atkins and Campbell. CineMagic, however, confuses corporate liability with individual liability. To assert a claim against a corporation based upon the actions of its employees, it may not be necessary for the complaint to identify every employee that committed every alleged wrongful act. See O'Bryan v. Holy See, 549 F.3d 431, 453 n.9 (6th Cir. 2008); see also Frieler v. Carlson Mktg. Group, 751 N.W.2d 558, 583 (Minn. 2008) ("[A]n employer is liable for an employee's intentional misconduct if (1) the source of the tort is related to the duties of the employee, and (2) the tort occurs within work-related limits of time and place." (quotations omitted)). To assert claims against individuals, however, a plaintiff must identify the individuals and their alleged tortious conduct. CineMagic's complaint does not make these required allegations. Accordingly, the court dismisses the tortious interference and defamation claims against Atkins and Campbell.

### C. Minnesota Franchise Act

Finally, in addition to the fraud claim discussed above, the complaint alleges that IMAX "dealt inequitably with CineMagic [in violation of the Minnesota Franchise Act] by failing to offer a joint venture agreement." (Compl. ¶ 124.) The Minnesota Franchise Act protects franchisees from "unfair contracts and other abuses" by prohibiting certain unfair practices. Banbury v. Omnitrition Int'l, Inc., 533 N.W.2d 876, 882 (Minn. Ct. App. 1995) (citing Martin Investors, Inc. v. Vander Bie, 269 N.W.2d 868, 872 (Minn. 1978)); see also Minn. Stat. § 80C.14. The Act extends liability to officers, directors and employees of a corporation "who materially aid[] in the act or transaction constituting the violation ... unless the person who would otherwise be liable hereunder had no knowledge of or reasonable grounds to know of the existence of the facts by reason of which the liability is alleged to exist." Minn. Stat. § 80C.17, subdiv. 2; see also Avery v. Solargizer Int'l, Inc., 427 N.W.2d 675, 680 (Minn. Ct. App. 1988).

CineMagic alleges that "IMAX corporate officers and other employees" are personally liable for its damages under the Minnesota Franchise Act. (Compl. ¶ 127.) Assuming that a failure to offer CineMagic the joint venture agreement would violate the Minnesota Franchise Act, the allegations in the complaint indicate only that Atkins told Sieves that a joint venture agreement would be less lucrative. (Id. ¶ 16.) The complaint does not allege that

Atkins or Campbell failed to offer CineMagic the joint venture agreement or that they materially aided such a failure. Therefore, CineMagic has not stated a claim of inequitable conduct under the Minnesota Franchise Act against the individual officers. Accordingly, the court dismisses this claim against Atkins and Campbell.

## CONCLUSION

Based on the above, **IT IS HEREBY ORDERED** that:

1.   The motion to dismiss [Doc. No. 23] by Campbell and Atkins is granted;

2.   The breach of contract claims against Campbell and Atkins are dismissed with prejudice; and

3.   All other claims are dismissed without prejudice.

Dated:  March 11, 2009

s/David S. Doty
David S. Doty, Judge
United States District Court
